THE STATE OF OHIO, APPELLEE, v. KEARNS, APPELLANT.*

(No. 5337—Decided March 21, 1956.)

Mr. *Justin L. Sillman,* Mr. *Robert E. Albright* and Mr. *R. Rush Warren,* for appellee.

Mr. *Robert N. Gorman,* Mr. *Gale R. King* and Mr. *Milton L. Farber,* for appellant.

MILLER, P. J.  This is an appeal on questions of law from a judgment of the Common Pleas Court rendered upon the verdict of a jury finding the defendant guilty of embezzlement in violation of Section 12876, General Code (Section 2919.03, Revised Code).  Specifically the indictment charges that Frank H. Kearns, "being an officer, to wit, being the prosecuting attorney for the county of Franklin aforesaid, elected in pursuance of law to said office of public trust in this state, did unlawfully and fraudulently embezzle and convert to his own use certain money belonging to said county of Franklin aforesaid, in the amount and value of two hundred and ten dollars ($210), the property of the said county of Franklin aforesaid, without the assent of any owner of said money; which said money had then and there come into the possession and care of him, the said Frank H. Kearns, by virtue and under color of his said office aforesaid, and while he, the said Frank H. Kearns, was discharging and pretending to discharge the duties of said office."

An examination of the record discloses that the state of-

*Judgment affirmed, 165 Ohio St., 573.

fered evidence that Frank H. Kearns was the prosecuting attorney of Franklin County; that under Section 3004, General Code (Section 325.12, Revised Code), he was allowed a certain sum of money to provide "for expenses which may be incurred by him in the performance of his official duties and in the furtherance of justice"; that from this sum Kearns appropriated to his personal use the sum of $210; that the voucher upon which this sum was drawn, as well as the itemized annual statement, filed with the county auditor in accordance with Section 3004, certified that the $210 was for expenses incurred by him "in attending National Association of County Prosecuting Attorneys in New Orleans to discuss model anti-gambling act—model penal code and narcotic problems."

The record reveals further that Kearns never attended the convention in New Orleans as certified but instead used the $210 to satisfy a debt which he owed at a clothing store. After presenting all the above evidence to the jury, the state rested its case, and the defendant moved for an acquittal, which motion was overruled. The defendant then proceeded with his defense, offering the testimony of several witnesses which indicated that shortly prior to the withdrawal of the funds Kearns received some information concerning the mysterious disappearance of a girl by the name of Lola Celli, and that he was making a further investigation of that case. Kearns testified that he desired to keep the investigation secret, and in order to do so he did not correctly state the reason for the withdrawal of the $210. He said that he had previously advanced this sum for expenses in making the investigation and that he took the $210 to reimburse himself for this expenditure. He was supported to some extent in his statement by one of the employees in his office. Other witnesses were called who testified that Kearns had discussed the Celli case with them. After the close of all the evidence and also at the conclusion of the court's instruction to the jury, counsel for the defendant filed motions for an instructed verdict, all of which were overruled.

The first error assigned is that the court should have sustained each of these motions for the reason that the evidence presented was not sufficient to sustain a conviction. In considering this claim of error, it first becomes necessary to exam-

ine that statute under which the indictment was drawn, to wit, Section 12876, General Code (Section 2919.03, Revised Code), which provides:

"Whoever, being elected or appointed to an office of public trust or profit, or an agent, clerk, servant or employee of such officer or board thereof, embezzles or converts to his own use, or conceals with such intent, any thing of value that shall come into his possession by virtue of such office or employment, is guilty of embezzlement * * *."

We are of the opinion that the state's evidence meets all the requirements of the statute in order to make a prima facie case, to wit (1) that Kearns held an office of public trust, and (2) that he converted to his own use money that came into his possession by virtue of such office. Therefore the motion for an acquittal at the close of the state's case was properly overruled. Whether the taking was wrongful is a matter of defense, and upon this subject matter the court properly instructed the jury as follows:

"The state takes issue with and denies such claimed expenditure (that is, in the Lola Celli case) and contends that said $210 so received personally by defendant as aforesaid, was not in reimbursement thereof, but an unlawful and fraudulent conversion of said public funds, the $210 in question, to his own personal use.

"You are instructed, as a matter of law, that such claimed expenditure, if made, would be a lawful expenditure for which defendant would have the full right to so reimburse himself from the said public funds in his possession, and are further instructed that there is no burden of proof on defendant to establish this claimed expenditure in any manner, or by any quantum of evidence, but that you shall take into consideration his evidence adduced thereon, along with the other evidence in the case, in determining whether the state has established guilt of defendant of the offense in the indictment charged beyond a reasonable doubt. It does not necessarily follow that by reason of defendant having reported receipt of said $210 as a reimbursement of a personal expense for a trip to New Orleans not made, that he converted same to his own use. That is only a circumstance to take into consideration, along with the other

evidence in the case, in determining whether his guilt is established beyond a reasonable doubt.''

It is apparent, from the verdict returned, that in weighing the evidence the jury placed no credence in the testimony, offered on behalf of the defendant, which would constitute a defense to the action. This was clearly within its province. The defense relies heavily on the case of *State* v. *Urbaytis,* 156 Ohio St., 271, 102 N. E. (2d), 248, which we do not think is parallel with the case at bar. In the cited case, Urbaytis, as guardian, was charged with embezzlement of his ward's estate. He failed to account satisfactorily to the Probate Court and was removed from the guardianship. Thereafter he was indicted for embezzlement, waived jury trial and was found guilty. In the proceeding before the Probate Court it appeared that Urbaytis claimed that he had made a full settlement with his ward, but in this he was not corroborated. Hence a finding was made against him. In the criminal embezzlement trial, Urbaytis did not offer himself as a witness, but the ward, who had not theretofore appeared and testified in the Probate Court proceeding, testified as a witness for Urbaytis that she received the money from him, and that his account with her was entirely and satisfactorily settled. The ward also traced her expenditures of the money she had received from Urbaytis, and her mother testified that she was present at the settlement and had seen Urbaytis turn the money over to the ward. The assigned error upon which Urbaytis relied was that the state had failed to prove a conversion of the money to Urbaytis' own use, and that mere failure or neglect to account upon demand by the Probate Court did not constitute proof of fraudulent conversion of the money to his own use. The opinion in that case states that there was no direct evidence that Urbaytis converted the funds to his own use or that he received any benefit from the funds personally; that the state's case rested upon Urbaytis' failure to account to the Probate Court, whereas the ward and her mother both testified that Urbaytis paid the money over to the ward; and that the testimony of the ward and her mother constituted the only explanation as to what became of the money. As to those circumstances, the opinion states, at page 278:

''Of course, neither in this case nor in any other criminal

case should a reviewing court substitute its judgment for that of the trier of the facts on questions of fact, but a majority of this court upon a perusal of the entire record is of the opinion that the evidence against the accused did not reach 'that high degree of probative force and certainty' which the law requires to justify conviction.''

Thus, in the *Urbaytis case*, proof of the corpus delicti, to wit, the conversion of the money to Urbaytis' own use, rested entirely on circumstantial evidence. That circumstantial evidence did not, in view of the ward's testimony that Urbaytis settled with her and paid her in full, reach the required high degree of probative force and certainty which would sustain a conviction. In the case at bar, the state established by direct and documentary evidence that the $210 received by Kearns from the funds, upon the false voucher signed by him, was actually and in fact converted to his own personal use and benefit, and that the claimed expense was not incurred. Kearns testified that he cashed the check and used the proceeds to pay his bill at the clothing store.

In the cited case the court stated at page 277:

''However there was no direct evidence that he had appropriated or converted his ward's funds to his own use or employed such funds to his own advantage.''

In the present case the state established the corpus delicti by direct and documentary evidence. Thus this case and the cited case are clearly distinguishable. It therefore appears in the instant case that a conversion was definitely established, but whether it was wrongful was dependent upon the credibility of the claim that it was a reimbursement for a prior lawful expenditure.

The case of *State* v. *Baxter*, 89 Ohio St., 269, 104 N. E., 331, 52 L. R. A. (N. S.), 1019, Ann. Cas. 1916C, 60, appears to be parallel with this case on the legal question presented. Baxter, who was state Superintendent of Banks, took $37,000 of the funds that came to him by virtue of his office and used the same to redeem his collateral securities which he had pledged for a private debt. Some 20 days later and before he was called upon for the money or indicted, he negotiated the securities and restored the funds. The court held in the syllabus:

"1. This was embezzlement, in violation of Section 12876, General Code.

"2. The fact that he returned money of equal amount to the trust fund, before his secret appropriation of it became known, was no defense.

"3. It is the design and policy of that section and kindred statutes to prevent public officers and agents from using public funds in their possession or under their control, in any manner or for any purpose not expressly authorized by law."

At page 285 the court discussed Baxter's right to use the money under Sections 742-6 to 742-12, General Code, which defined the terms and purpose of the trust under which he held the money, and termed as "preposterous" his suggestion that he had a right to use the money with the intention of returning it. We have the same situation in the case at bar. Section 3004, General Code, limits the use of the fund "to provide for expenses which may be incurred by him [the prosecuting attorney] in the performance of his official duties and in the furtherance of justice." Clearly, if the money was not used as a reimbursement for a previous expenditure legally incurred, it was not used in accordance with the requirements of Section 3004.

It is our conclusion that the evidence is sufficient to sustain the conviction, and, therefore, the judgment is not against the manifest weight of the evidence.

It is urged next that the indictment as exemplified by the bill of particulars does not state an offense. Counsel urge here that embezzlement is a purely statutory offense; that, unless the capacity of the defendant was one of agent, trustee or custodian, there could be no offense under Section 12876, General Code; that no such relationship is created by the provisions of Section 3004, but instead the relationship is one of debtor and creditor; and that the defendant was not required to maintain the funds in a separate account but could commingle them with his own funds, subject only to make a proper accounting for all expenditures with the county auditor before the first Monday of each January. Reference is made to other sections of the Code, under which a prosecution might have been had, but we are not interested in these. The only question confronting us

is whether the charge was properly brought under Section 12876. The record reveals that the fund from which the money was appropriated was created under the following provisions of Section 3004:

"There shall be allowed annually to the prosecuting attorney in addition to his salary and to the allowance provided by Section 2914, an amount equal to one-half the official salary, to provide for expenses which may be incurred by him in the performance of his official duties, and in the furtherance of justice * * *. Upon the order of the prosecuting attorney the county auditor shall draw his warrant on the county treasurer payable to the prosecuting attorney or such other person as the order designates, for such amount as the order requires, not exceeding the amount provided for herein, and to be paid out of the general fund of the county.

"* * *

"The prosecuting attorney shall annually before the first Monday of January, file with the county auditor an itemized statement, duly verified by him, as to the manner in which [such] fund has been expended during the current year, and shall if any part of such fund remains in his hands unexpended, forthwith pay the same into the county treasury."

We do not think that the foregoing provisions form any basis for concluding, as the defendant does, that they sanction the commingling of the fund with personal and private funds. Public policy condemns such a practice even though the statute itself may not in specific terms prohibit it. It is said in 32 Ohio Jurisprudence, 954, Section 94, that "it is elementary that public money may be used only for public purposes, never for private gain." The fund does not belong to the prosecuting attorney. The use of the fund is limited to the purposes stated in the statute, and he may not lawfully convert the fund to his own personal use or benefit. The fact that he must account and pay over any unexpended portion of the fund does not create a debtor-creditor relationship. All public officers who obtain possession of public funds are required to account for the same. The officer comes into possession of the fund solely in a public-trust capacity and for the purposes stated in the statute. The fund is not for personal fees or emoluments or additional com-

pensation for services. The definition of the offense, with which Kearns was charged, in Section 12876, General Code, sets forth the class and capacity of the persons who may be charged thereunder, and under the facts presented it cannot be denied (1) that Kearns was the elected holder of an office of public trust, and (2) that the fund which he was charged with converting to his own use came into his possession by virtue of his office. Whether he used it to reimburse himself for expenditures lawfully made previously was a factual question and one solely for the determination of the jury.

We have examined the remaining errors assigned, to wit, (1) alleged misconduct of counsel, (2) the supplemental charge to the jury, and (3) error in refusal to grant a new trial, and find none of these claims well taken. The case was well and fairly tried, and the verdict of the jury must be sustained.

We find no error in the record prejudicial to the defendant, and the judgment is affirmed.

*Judgment affirmed.*

HORNBECK and FESS, JJ., concur.

FESS, J., of the Sixth Appellate District, sitting by designation in the Second Appellate District.